## Bremmer, Appellant, *v.* Protected Home Mutual Life Insurance Company.

Argued October 2, 1969. Before JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*James D. McDonald, Jr.,* with him *Quinn, Plate, Gent, Buseck & Leemhuis,* for appellant.

*John F. Potter,* with him *MacDonald, Illig, Jones & Britton,* for appellee.

OPINION BY MR. JUSTICE EAGEN, January 9, 1970:

This is an action in assumpsit to recover the proceeds claimed to be due on a life insurance policy issued by the defendant insurance company. The court below entered a summary judgment in favor of the defendant, following a motion therefor, pursuant to Rule 1035, Pa. R. Civ. P.[1] The plaintiff appeals.

On or about September 12, 1967, August M. Bremmer applied to the defendant for a life insurance policy. On September 18th, he was examined by a physician selected by the defendant, and the policy requested was issued. The policy provided, in part, that it could not

---

[1] Rule 1035 of the Pa. R. Civ. P. provides in material part: "(a) After the pleadings are closed, but within such time as not to delay trial, any party may move for summary judgment on the pleadings, depositions, answers to interrogatories, admissions on file and supporting affidavits, if any."

be contested after two years. The insured's wife, Esther I. Bremmer, was named primary beneficiary. August M. Bremmer died on December 22nd.[2] Esther I. Bremmer's claim for payment under the policy was refused by the defendant, and this suit followed.

For the purposes of this appeal, the pertinent part of the record may be summarized thusly:

In its answer to the complaint, the defendant averred under "New Matter" that August M. Bremmer, the insured, consulted a Dr. Hipps on September 1, 1967, complaining of pain in the right leg and difficulty in walking, and was advised that he was possibly suffering from a circulatory ailment and should see a Dr. D'Angelo, a cardiovascular specialist; that the insured consulted Dr. D'Angelo on September 1st and 6th; and that the insured failed to disclose these ailments or consultations either in his application for the policy or to the defendant's medical examiner, and thus gave false answers which misled the defendant, contrary to the insured's obligation under the contract.[3]

In her reply to the allegations of the defendant, outlined before, the plaintiff admitted that the insured had visited Dr. Hipps and Dr. D'Angelo in September, 1967, and "that he may have had some leg pain at that

---

[2] The death was attributed to carcinoma in the lung.

[3] The policy provided that the contract consists of the policy and the application therefor.

In Part 2 of the application, the following questions and answers appear:

"10. When did you last consult a physician or practitioner? September 2, 1967.

Name   Dr. Hipps

Address   Erie, Pa.

Illness?  Head cold   Duration?  3 days."

The application which was signed by the insured also included a declaration that all answers and statements therein were complete and true to the best of the insured's knowledge and information.

time" but denied these visits "amounted to consultations as used in the policy application"; the plaintiff denied that the insured made any false answers or statements either in the application for the policy or to the defendant's medical examiner, and averred that he answered all questions to the best of his knowledge, information and belief; and the plaintiff further specifically denied that a circulatory ailment diagnosis was "conveyed" to the insured by Dr. Hipps, and averred that the insured honestly and reasonably believed that he was suffering from a head cold at the time of the visit to this physician.

The depositions of Dr. Hipps and Dr. D'Angelo were then taken by the defendant and filed as part of the record.[4] The motion for summary judgment followed.

In granting summary judgment the court below concluded, that the insured secured the policy through false and fraudulent statements, which conclusion the court said was established by the uncontradicted testimony of Dr. Hipps and Dr. D'Angelo. In other words, the court passed upon the credibility of this testimony as well as its legal effect.

We conclude that the learned court below erred in entering summary judgment for the reasons that follow.

A summary judgment under Rule 1035, supra, is proper only if the evidence then before the court is such as would warrant the granting of a defendant's point for binding instructions after trial. *Lewis v. Geisinger Medical Center*, 43 Pa. D. & C. 2d 105 (1967). See also, 1 Goodrich-Amram Civil Practice (1969

---

[4] This testimony need not be completely detailed here; suffice to say that Dr. Hipps stated in part therein: "I told him [the insured] I thought this could be a circulatory problem of the kind involving a blood clot in the major artery in this area that would go into the right leg, and that it should be further checked by a specialist."

Supp.) at 299-305. While it is well established that an insurer may avoid a policy that is issued in reliance on false and fraudulent statements, made by or on behalf of the insured,[5] at trial the court may not direct a verdict for the insurer unless the falsity of the answers and statements is established by the plaintiff's own admissions or witnesses, or by unimpeached documentary evidence. Cf. *Shafer v. John Hancock Mutual Life Ins. Co.,* supra n.5 This is not such a case.

Herein, the determination of whether or not the insured gave false and fraudulent statements depends upon a consideration of the testimony of Dr. Hipps and Dr. D'Angelo. This testimony was oral. The fact that these witnesses may have refreshed their recollection by referring to "office notes" did not raise their testimony to the character of "unimpeached documentary evidence." See 2 Henry, Pennsylvania Evidence §823 (4th ed. 1953). Moreover, these "office notes" were not introduced into evidence and are not part of the record.

Additionally, it has long been the rule in Pennsylvania that where the testimony of the party having the burden of proof is oral, the credibility of that testimony is always for the jury: *Kopar v. Mamone,* 419 Pa. 601, 215 A. 2d 641 (1966); *Exner v. Safeco Ins. Co. of America,* 402 Pa. 473, 167 A. 2d 703 (1961); *Cadwallader v. New Amsterdam Casualty Co.,* 396 Pa. 582, 152 A. 2d 484 (1959); and *Nanty-Glo Borough v. American Surety Co.,* 309 Pa. 236, 163 A. 523 (1932). As we stated in *Nanty-Glo Borough v. American Surety Co.,* supra, at 238, quoting from *Reel v. Elder,* 62 Pa. 308, 316 (1869): "However clear and indisputable may be the proof when it depends on oral testimony, it is nevertheless the province of the jury to decide,

---

[5] See *Shafer v. John Hancock Mutual Life Ins. Co.,* 410 Pa. 394, 189 A. 2d 234 (1963), and *Derr v. Mutual Life Ins. Co.,* 351 Pa. 554, 41 A. 2d 542 (1945).

under instructions from the court, as to the law applicable to the facts, and subject to the salutary power of the court to award a new trial if they should deem the verdict contrary to the weight of the evidence." Rule 1035 did not and was not intended to change the law in this respect.

The fact that the plaintiff admitted in the pleadings that the insured did see the doctors involved, as the defendant alleged, does not in itself, under the circumstances, establish as a matter of law that the insured misled the defendant through the use of false and fraudulent statements.

Judgment vacated and the record is remanded with a procedendo.

Mr. Chief Justice BELL took no part in the consideration or decision of this case.