421 A.2d 747

**TOM MORELLO CONSTRUCTION COMPANY, INC., Appellant,**

**v.**

**BRIDGEPORT FEDERAL SAVINGS & LOAN ASSOCIATION and David W. Foulke.**

Superior Court of Pennsylvania.

Argued March 12, 1980.

Filed Sept. 26, 1980.

Petitions for Allowance of Appeal Denied Dec. 31, 1980.

330

John D. Maida, Norristown, for appellant.

Desmond J. McTighe, Norristown, for Bridgeport Federal, appellee.

William H. Bradbury, III, Norristown, for Foulke, appellee.

Before SPAETH, BROSKY and VAN der VOORT, JJ.

SPAETH, Judge:

This is an appeal from an order granting motions for summary judgment on all three counts of appellant's complaint.

The allegations of the complaint may be summarized as follows. Appellant is a construction company specializing in excavation and in the installation of water and sewer lines. In January 1976 it entered into various contracts with the Charles Differ Land Development Corporation in connection with a development known as the Russell Tract, in Collegeville. Differ assured appellant that sufficient funds to pay appellant for its work at the Russell Tract would be placed in escrow with Bridgeport Federal Savings and Loan Association, which is one of the two appellees in this appeal. In April 1976, before beginning the work, appellant conferred with David W. Foulke, president of Bridgeport Federal, who is the other appellee, and Foulke orally confirmed that sufficient funds were being held in escrow for appellant's benefit, and said that Differ was a reliable contractor with

the ability to complete the development profitably, and that appellant need not worry about being paid. In reliance on Foulke's representations concerning the escrow fund and Differ's ability, appellant performed his contracts with Differ. However, appellant received only small progress payments from Differ while work at the Russell Tract was underway. In September 1976, after work had been substantially completed, appellant tried to collect the money due it by asking Bridgeport Federal to pay it from the escrow fund. Payment was refused and appellant was told that it would have to look to Differ for payment, which it did unsuccessfully.

The complaint is against Bridgeport Federal, and is in assumpsit and trespass. The assumpsit count claims payment under the escrow agreement. There are two trespass counts. The first trespass count alleges that Bridgeport Federal made payments from the escrow account direct to Differ and that this was a violation of its duty of care to see that the escrow account protected appellant. The second trespass count alleges that Bridgeport Federal, through Foulke, misrepresented the protection to be afforded appellant by the escrow arrangement and Differ's reliability. Bridgeport Federal responded by joining Foulke as an additional defendant and by filing a preliminary objection pleading the Statute of Frauds [1] as a defense to any oral promise that might have been made to pay appellant from the escrow account what Differ owed appellant.

■ The lower court overruled the preliminary objection. In considering the objection, the court properly looked only to the allegations of the complaint and deemed them admitted. *Gekas v. Shapp*, 469 Pa. 1, 364 A.2d 691 (1976). As just noted, the complaint alleges that the escrow fund was held by Bridgeport Federal to assure that appellant would be paid for the work it did under its contract with Differ. It followed that the allegation that Bridgeport Federal, through Foulke, had orally promised to pay appellant from the escrow fund what Differ might owe appellant was not a

1. 33 Pa.C.S.A. § 3.

promise to pay the debt of another but merely an affirmance of Bridgeport's own duty under the escrow agreement between it and Differ. The lower court appropriately cited cases holding that a promise to pay from a fund established for such a purpose is not within the Statute of Frauds. *Riley v. Kahan*, 68 Pa.Super. 415 (1917); *Koons v. Franklin Trust Co.*, 276 Pa. 377, 120 A. 387 (1923).

After depositions were taken from Tom Morello, appellant's president, and Foulke, and written interrogatories were answered by Bridgeport Federal, both Bridgeport Federal and Foulke moved for summary judgment. The lower court granted both motions, and this appeal followed.

■■■ Pennsylvania Rule of Civil Procedure 1035 provides that summary judgment is to be entered only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Pa.R.C.P. 1035(b). The moving party has the burden of demonstrating that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. In deciding whether this burden has been satisfied, the court must examine the record in the light most favorable to the non–moving party. *Amabile v. Auto Kleen Car Wash*, 249 Pa.Super. 240, 376 A.2d 247 (1977); *Schacter v. Albert*, 212 Pa.Super. 58, 239 A.2d 841 (1968). The court is not to resolve any genuine issue of material fact; its sole responsibility is to determine whether such an issue exists. Moreover, the court should enter summary judgment only when the case is clear and free from doubt. *Amabile v. Auto Kleen Car Wash, supra*; *McFadden v. American Oil Co.*, 215 Pa.Super. 44, 257 A.2d 283 (1969).

■■ However, Rule 1035 also provides that where a motion for summary judgment has been supported with depositions, answers to interrogatories, or affidavits, the non–moving party may not rest on the mere allegations or denials of its pleading. Pa.R.C.P. 1035(d). Where the allegations of

the non–moving party's pleading have been controverted by the moving party's supporting material, the non–moving party must by affidavit, or in some other way provided for by the rule, set forth specific facts showing that a genuine issue of material fact exists. *Phaff v. Gerner*, 451 Pa. 146, 303 A.2d 826 (1973).

In ruling on the motion for summary judgment, the lower court correctly found on the basis of the material before it that despite the allegations of the complaint, the escrow fund had not been established, and was not being held, for appellant's benefit. The depositions and answers to interrogatories establish the following uncontroverted facts concerning the escrow fund. Funding for the Russell Tract development was provided by a loan, secured by a mortgage, from Bridgeport Federal to Differ. Before issuing the necessary permits for installation of the water and sewer lines and other municipal improvements, the Borough of Collegeville required Differ, as the developer, to establish an escrow fund to insure that these improvements would be properly completed. This requirement, or something equivalent, is standard procedure where a private developer is responsible for providing municipal improvements. The escrow fund was established by Bridgeport Federal holding back $130,000 of the $725,000 loan to Differ.[2] Appellees' motions for summary judgment included a copy of a letter from Bridgeport Federal to the Borough of Collegeville confirming the existence of the escrow fund and stating that upon inspection and approval of the improvements by Borough officials, payments would be made from the escrow

2. The lower court stated that "Differ never deposited funds of his own into Bridgeport Federal for the benefit of Morello. At most, Differ requested the Collegeville–Trappe Borough to pay him for the work completed ..." Slip op. at 7. This statement is somewhat misleading, for it suggests that it was the Borough rather than Differ that was the origin of the escrow fund. It may be true that Differ did not literally deposit money with Bridgeport Federal for the fund, but it may as well have; in practical effect there is no difference between Bridgeport Federal first paying the entire $725,000 to Differ and Differ then depositing $130,000 into the escrow fund, and Bridgeport Federal withholding $130,000 for the fund and paying Differ only the balance of the $725,000.

fund to Differ.[3]  This was the only document concerning the escrow fund in the record, and it makes no mention whatsoever of appellant.

■  This case illustrates the difference between ruling on a preliminary objection and ruling on a motion for summary judgment.  As described in appellant's complaint, the escrow fund was created for appellant's benefit so that appellees' oral promises concerning the fund would have been outside the Statute of Frauds.  However, the depositions and other material before the court in ruling on the motions for summary judgment established that the fund was not created for appellant's benefit.  Appellees therefore had no duty arising from the existence of the fund to pay Differ's debt to appellant.  Any oral promises they may have made to do so are made unenforcible by the Statute of Frauds.  The lower court therefore correctly granted appellees' motion for summary judgment on the assumpsit count.

■  It will be recalled that the first trespass count alleged that Bridgeport Federal had been negligent in making payments from the escrow account direct to Differ.  However, as has just been discussed, under the escrow agreement it was Bridgeport Federal's duty to make payments to Differ after approval by the Borough.  On the basis of the material before the lower court, it is uncontroverted that that is exactly what Bridgeport Federal did.  In doing so, there-

3.  The letter read:

December 10, 1975

Borough of Collegeville
Collegeville, PA 19426
　Re: Charles Differ Land Development
　　　Corp. 9th Avenue, Collegeville, Pa.
Attention:  Bernard Spector:
Gentlemen:
　Please be advised that our association has in escrow $130,000 for municipal improvements on the above captioned property.  All funds will be disbursed upon inspection and approval of Borough Officials and inspection and approval of our association.  I would appreciate instructions from your office as to what procedures will be taken to insure prompt payment to Mr. Differ, as work progresses.  Please call me if I can be of any assistance.
　　　Very truly yours,
　　　David W. Foulke, President

fore, it could not be negligent. The lower court therefore correctly granted appellees' motions for summary judgment on the first trespass count.

The second trespass count is based not on the *actual* nature of the escrow fund but rather on what Foulke, in his capacity as president of Bridgeport Federal, is alleged to have told appellant about the fund and on appellant's reliance on that representation. It will be recalled that the complaint alleged that before beginning work, appellant was orally assured by Foulke that the escrow fund did exist for its benefit and that Differ was a reliable contractor, and that in reliance on Foulke's representations, appellant then performed its contracts with Differ. These allegations are supported by Tom Morello's deposition and affidavit in opposition to summary judgment. Appellant thus complied with the requirement of Pa.R.C.P. 1035(d), that it not rest on its pleading in opposing a motion for summary judgment that has been supported by depositions or affidavits.

In his deposition, Foulke disclaimed any memory at all of any conversation with Morello in April. The lower court opinion does not acknowledge this difference between Foulke's memory and Morello's. The court believed that both trespass counts rose or fell with the assumpsit count; on this premise, the conversation between Morello and Foulke was immaterial, and differing accounts of it did not bar summary judgment.

■ We do not agree that the second trespass count depends on the assumpsit count. The essence of the claim pleaded by the second count is that Bridgeport Federal, through Foulke, misrepresented the nature of the escrow fund and that appellant reasonably relied on that representation to its detriment. The alleged April conversation between Morello and Foulke is central to this claim. Whether the conversation took place at all, and if it did, what form it took, is a genuine issue of material fact, which must be resolved by a finder of fact. Accordingly, the lower court should not have granted appellees' motions for summary judgment on the second trespass count.

Bridgeport Federal has taken the position that if Foulke did make the representations that appellant claims he did, he did so without authority and is therefore individually liable. However, appellees' motions for summary judgment were directed only at appellant. The lower court was not asked to consider the nature of Foulke's authority, and that remains to be determined.

The order of the lower court is affirmed insofar as it enters summary judgment on the assumpsit count and the first trespass count of appellant's complaint; the order is reversed insofar as it enters summary judgment on the second trespass count.