585 A.2d 29

**Helen M. GRIMES, Appellant,**

**v.**

**The PRUDENTIAL INSURANCE COMPANY OF AMERICA, Appellee.**

Superior Court of Pennsylvania.

Argued June 11, 1990.

Filed Jan. 14, 1991.

Charles A. Bierbach, Huntingdon, for appellant.

Charles P. Wasovich, Altoona, for appellee.

Before WIEAND, DEL SOLE and MONTEMURO, JJ.

WIEAND, Judge:

On or about March 19, 1986, Prudential Insurance Company issued a policy of insurance in the amount of twenty-five thousand ($25,000) dollars on the life of Pauline Grimes. Named as beneficiary was Helen M. Grimes, the sister of the insured. Pauline Grimes died on March 18, 1987, and her sister made claim for the policy proceeds. After investigation, Prudential denied the claim on grounds that the insured had materially misrepresented her health and medical history.[1] The beneficiary then filed suit. After dis-

---

1. When Prudential denied the claim, it forwarded to Helen Grimes a check refunding the premium, plus interest, and a release. The beneficiary signed the release and returned it, together with the check,

covery had been completed, Prudential moved for summary judgment. The trial court concluded that the insured, knowingly and in bad faith, had withheld from Prudential material information regarding a fatty infiltration of the liver and diagnostic testing and treatment for hypertension.[2] Therefore, the court entered summary judgment for the insurer. This appeal followed.

The law applicable to motions for summary judgment was set forth in *Austin J. Richards, Inc. v. McClafferty*, 371 Pa.Super. 269, 538 A.2d 11 (1988), *allocatur denied*, 520 Pa. 570, 549 A.2d 131 (1988), as follows:

A motion for summary judgment may properly be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Pa.R.C.P. 1035(b). See also: *Rybas v. Wapner*, 311 Pa.Super. 50, 54, 457 A.2d 108, 109 (1983); *Williams v. Pilgrim Life Insur-*

to Prudential. This incident did not figure in the trial court's entry of summary judgment and is not presently before this Court for consideration. With respect thereto, we express no opinion.

2. The pertinent part of the insured's application appears as follows:

| | Yes | No |
|---|---|---|
| 26. Is any person to be covered now being treated or taking medicine for any condition or disease? | ☐ | ☒ |
| 27. Has any person to be covered ever: | Yes | No |
| a. had any surgery or been advised to have surgery and has not done so? | ☒ | ☐ |
| b. been in a hospital, sanitarium or other institution for observation, rest, diagnosis or treatment? | ☒ | ☐ |
| c. regularly used or is any such person now using, barbiturates or amphetamines, marijuana or other hallucinatory drugs, or heroin, opiates or other narcotics, except as prescribed by a doctor? | ☐ | ☒ |
| d. been treated or counseled for alcoholism? | ☐ | ☒ |
| e. had life or health insurance declined, postponed, changed, rated-up or withdrawn? | ☐ | ☒ |
| f. had life or health insurance canceled, or its renewal or reinstatement refused? | ☐ | ☒ |
| 28. Other than as shown above, in the past 5 years has any person to be covered: | Yes | No |
| a. consulted or been attended or examined by any doctor or other practitioner? | ☒ | ☐ |
| b. had electrocardiograms, X-rays for diagnosis or treatment, or blood, urine, or other medical tests? | ☐ | ☒ |
| c. made claim for or received benefits, compensation, or a pension because of sickness or injury? | ☐ | ☒ |
| 29. Does any person to be covered now have a known sign of any physical disorder, disease or defect not shown above? Yes ☐ No ☒ | | |

D. What are the full details of the answer to 25 and to each part of 23 and 26 thru 29 which is answered "Yes"?

| Name & Question No. | Illness or other reason | Dates and duration of illness | Full names and addresses of doctors and hospitals |
|---|---|---|---|
| 25. Checkup | 4/85 | ok | Dr. Savory Huntingdon, Pa |
| 27 a/b. gall bladder removed | age 17 | ok | Dr. R. Reines Huntingdon, Pa |
| 28 a. annual checkups | | ok | Dr. Savory Huntingdon, Pa |

*ance Co.,* 306 Pa.Super. 170, 172, 452 A.2d 269, 270 (1982). In passing upon a motion for summary judgment, the court must examine the record in the light most favorable to the nonmoving party. *Pocono International Raceway, Inc. v. Pocono Produce, Inc.,* 503 Pa. 80, 82–83, 468 A.2d 468, 470 (1983); *Zimmerman v. Zimmerman,* 322 Pa.Super. 121, 124–125, 469 A.2d 212, 213 (1983); *Wilk v. Haus,* 313 Pa.Super. 479, 482, 460 A.2d 288, 289–290 (1983). It is not part of the court's function to decide issues of fact but solely to determine whether there is an issue of fact to be tried. *Wilk v. Haus, supra,* 313 Pa.Superior Ct. at 482, 460 A.2d at 290; *Tom Morello Construction Co. v. Bridgeport Federal Savings & Loan Association,* 280 Pa.Super. 329, 334, 421 A.2d 747, 750 (1980). Any doubt must be resolved against the moving party. *Chorba v. Davlisa Enterprises, Inc.,* 303 Pa.Super. 497, 500, 450 A.2d 36, 38 (1982); *First Pennsylvania Bank, N.A. v. Triester,* 251 Pa.Super. 372, 378, 380 A.2d 826, 829 (1977).

*Id.* at 273–274, 538 A.2d at 13, quoting *Thorsen v. Iron and Glass Bank,* 328 Pa.Super. 135, 140–141, 476 A.2d 928, 930–931 (1984).

The Pennsylvania Supreme Court has established the law pertaining to an insurer's right to avoid a policy of life insurance for fraudulent information contained in the application by the following language:

In order to avoid the policy sued upon, the burden [is] upon the defendant to establish that the statements made by the insured in the application were material to the risk and were falsely and fraudulently made by the insured: *Evans v. Penn Mutual Life Insurance Co.,* 322 Pa. 547, 186 A. 133 (1936).... Inquiries in applications for life insurance as to prior medical attendance and hospitalization are material to the risk and fraudulent answers thereto must permit the insurer to avoid the policy, not only because of a failure to report the exact nature of the previous illness, but also because of a failure to furnish information from which the insurer could protect itself

through further investigations. *Reeder v. Metropolitan Life Ins. Co.*, 340 Pa. 503, 17 A.2d 879 (1941); *Prevete v. Metropolitan Life Ins. Co.*, 343 Pa. 365, 22 A.2d 691 (1941).

*Shafer v. J. Hancock Mutual Life Ins. Co.*, 410 Pa. 394, 398–399, 189 A.2d 234, 236 (1963). See also: *Lynch v. Metropolitan Life Ins. Co.*, 427 Pa. 418, 235 A.2d 406 (1967); *Schleifer v. Nationwide Life Ins. Co.*, 421 Pa. 359, 219 A.2d 692 (1966); *Piccinini v. Teachers Protective Mutual Life Ins. Co.*, 316 Pa.Super. 519, 528–529, 463 A.2d 1017, 1023–1024 (1983).

■ Ordinarily, whether a misstatement of fact was made in bad faith is an issue of fact for the jury. *Lynch v. Metropolitan Life Ins. Co., supra; Schleifer v. Nationwide Life Ins. Co., supra; Evans v. Penn Mutual Life Ins. Co.*, 322 Pa. 547, 555, 186 A. 133, 139 (1936); *Piccinini v. Teachers Protective Mutual Life Ins. Co., supra* 316 Pa.Super. at 530, 463 A.2d at 1024, citing *Baldwin v. Prudential Ins. Co. of America*, 215 Pa.Super. 434, 258 A.2d 660 (1969). However,

> where it is established by uncontradicted documentary evidence that the insured has consulted physicians so frequently, or undergone medical or surgical treatment so recently, or of such a serious nature, that a person of ordinary intelligence could not have forgotten these incidents in answering a direct and pointed question in an application for insurance, bad faith may be inferred as a matter of law if the insured denies in his answer that any physician has been consulted, or any medical or surgical treatment has been received during the period of inquiry.

*Freedman v. Mutual Life Insurance Company of New York*, 342 Pa. 404, 409, 21 A.2d 81, 84 (1941); quoted in *McCloskey v. New York Life Insurance Company, supra* 292 Pa.Super. [1,] 6–7, 436 A.2d [690,] 692 [ (1981) ].

*Piccinini v. Teachers Protective Mutual Life Ins. Co., supra* 316 Pa.Super. at 530, 463 A.2d at 1024.

.

In the instant case, it is clear that the applicant failed to inform Prudential fully regarding her medical history. The information withheld, moreover, was material to the risk. See: *Piccinini v. Teachers Protective Mutual Life Ins. Co.,* *supra* at 529, 463 A.2d at 1024. In order for the insurer to avoid liability, however, it must also appear that the failure to disclose was fraudulent.

■ To show bad faith, Prudential relied upon the deposition testimony of Dr. James E. Savory, who had been the insured's physician. As a general rule, summary judgment may not be granted on the basis of oral testimony offered on behalf of the moving party. *Nanty–Glo Borough v. American Surety Co.,* 309 Pa. 236, 163 A. 523 (1932). This principle was more recently expressed in *Bremmer v. Protected Home Mutual Life Ins. Co.,* 436 Pa. 494, 260 A.2d 785 (1970), where the Supreme Court articulated the rule as follows:

> [I]t has long been the rule in Pennsylvania that where the testimony of the party having the burden of proof is oral, the credibility of that testimony is always for the jury: *Kopar v. Mamone,* 419 Pa. 601, 215 A.2d 641 (1966); *Exner v. Safeco Ins. Co. of America,* 402 Pa. 473, 167 A.2d 703 (1961); *Cadwallader v. New Amsterdam Casualty Co.,* 396 Pa. 582, 152 A.2d 484 (1959); *and Nanty–Glo Borough v. American Surety Co.,* 309 Pa. 236, 163 A. 523 (1932). As we stated in *Nanty–Glo Borough v. American Surety Co., supra,* at 238, [163 A. 523], quoting from *Reel v. Elder,* 62 Pa. 308, 316 (1869): "However clear and indisputable may be the proof when it depends on oral testimony, it is nevertheless the province of the jury to decide, under instructions from the court, as to the law applicable to the facts, and subject to the salutary power of the court to award a new trial if they should deem the verdict contrary to the weight of the evidence."

*Id.* 436 Pa. at 498–499, 260 A.2d at 787. The credibility of Dr. Savory's testimony, therefore, is for the jury to determine.

Moreover, a careful review of the record suggests that Dr. Savory's testimony does not support the trial court's determination that, as a matter of law, the applicant's answers were intentionally false because she was "well aware of her condition." Dr. Savory testified that Pauline Grimes had appeared for office examinations approximately three times per year between February, 1982 and March, 1985 and that he had tried to impress upon her during this period the importance of controlling her blood pressure. He conceded, however, that Pauline Grimes may have experienced difficulty in comprehending the seriousness of her hypertension. Thus, he testified that

> throughout my relationship with this lady ... I felt she had difficulty understanding just how serious her problem was. She had trouble just going to work. I'm not sure this lady ever drove a car, she was cared for, in my impression was that she was cared for by her sister most of her life, her sister always brought her to her appointments even though at times she worked just a few blocks from here, her sister had to pick her up from work and bring her over, and I believe that I talked to her about her problems and how serious they were but it's hard to be sure just how much she understood.[3]

Hypertension is chronic and insidious, but from the patient's perspective it is usually asymptomatic. Pauline Grimes was last examined by Dr. Savory in March, 1985, a year before she applied for a policy of life insurance from Prudential. At the time of that examination she was told by her doctor that her blood pressure was satisfactory. On her employee physical form, Dr. Savory also recorded that her blood pressure was "normal." The record does not

---

**3.** The author of the dissenting opinion suggests that we have erred by focusing on whether the applicant perceived her condition to be serious because the application did not request information solely about serious conditions. The relevant issue, in our judgment, is whether the information withheld from the insurance company pertained to a condition or treatment so obviously serious or dramatic that it would necessarily be called to mind by the questions asked in the application. Under the circumstances here present, we conclude that this is an issue for the jury.

disclose that Pauline Grimes continued thereafter to take medicine or that she comprehended that she still had a condition of hypertension.

In 1982, 1983 and 1984, the applicant dutifully had appeared three times a year for checkups, but it does not appear unequivocally that she understood that these regular visits were anything more than regular checkups.[4] She discontinued these visits in 1985 and may well have believed that her hypertension had been controlled or alleviated when she applied for insurance in 1986. In view of the fact that the applicant's appearance for checkups had been at her physician's request; that the visits had been uneventful and entailed neither dramatic testing nor treatment; that she, herself, had experienced no discomfort and had not, at her instance, consulted or sought treatment; and that her physician, on her last visit, had told her that her blood pressure was satisfactory, it cannot be said as a matter of law that her failure to refer to her hypertension or disclose her office visits between February, 1982, and March, 1985, was intended to deceive the insurance company.

There is no evidence in the record before this Court that Pauline Grimes was ever aware of a fatty infiltration of her liver. Although a slight elevation in liver enzymes was disclosed by diagnostic tests performed in 1982, the patient was told that the test results were normal. Therefore, it cannot be said on the basis of the present record that the applicant fully understood that she was suffering from a liver abnormality or that when she applied for life insurance four years later she intentionally sought to conceal this portion of her medical history from the insurer.[5]

The law is clear that

4. The record does disclose that Dr. Savory scheduled Pauline Grimes's visits in order to monitor her blood pressure and, if necessary, to adjust her medication. However, our inquiry is not directed to the physician's intent. Our inquiry, rather, must focus upon the understanding which Pauline Grimes had of her condition and the reasons for her office visits.

5. The author of the dissent finds significant the contrast between the applicant's failure to report diagnostic testing four years before mak-

[m]ere mistakes, inadvertently made, even though of material matters, or the failure to furnish all details asked for, where it appears there is no intention of concealing the truth, does not work a forfeiture, and a forfeiture does not follow where there has been no deliberate intent to deceive, and the known falsity of the answer is not affirmatively shown.

*Evans v. Penn Mutual Life Ins. Co., supra* 322 Pa. at 553, 186 A. at 143. In this case, it will be for a jury to decide on the basis of all the evidence whether Pauline Grimes answered the questions on the application with knowledge that her responses were false or incomplete or whether the incomplete narration of her medical history was unintentional and inadvertent.

Reversed and remanded for further proceedings. Jurisdiction is not retained.

MONTEMURO, J., files a dissenting opinion.

MONTEMURO, Judge, dissenting:

Although I find that the majority has properly stated the law with regard to an insurer's right to avoid a policy of life insurance issued on the basis of fraudulent information, I disagree with the majority's application of those principles. I therefore dissent.

I agree with the majority's determination that the information provided by Pauline Grimes in her insurance application was false, and that the subject matter was material to the risk assumed by the insurance company. I believe,

ing application for coverage and her inclusion of a reference to gallbladder surgery performed many years earlier. However, gallbladder surgery is the type of treatment which is perceived as being so dramatic and serious that an ordinary person would not forget to report it when reciting his or her medical history. Diagnostic tests may be performed frequently during a person's life. In the absence of dramatic treatment, such diagnostic tests may soon be forgotten by the average person. We conclude, therefore, that it cannot be said as a matter of law that the applicant's failure to report uneventful diagnostic tests was fraudulent and not inadvertent. This, too, will be an issue for the jury.

however, that as a matter of law, we may infer that the statements were made in bad faith.

The majority aptly notes that

where it is established by uncontradicted documentary evidence that the insured has consulted physicians so frequently, or undergone medical or surgical treatment so recently, or of such a serious nature, that a person of ordinary intelligence could not have forgotten these incidents in answering a direct and pointed question in an application for insurance, bad faith may be inferred as a matter of law if the insured denies in his answer that any physician has been consulted, or any medical or surgical treatment has been received during the period of inquiry.

*Piccinini v. Teachers Protective Mutual Life Insurance Co.*, 316 Pa.Super. 519, 530, 463 A.2d 1017, 1024 (1983).

My review of the deposition testimony of Dr. James E. Savory, Ms. Grimes' treating physician from 1982 through the time of her death in March, 1987, convinces me that she acted in bad faith in responding to the questions posed by the insurance application.[1] Dr. Savory testified from his medical records that Pauline Grimes suffered from hypertension and that medication had been prescribed for this condition throughout the five year period that Dr. Savory treated her. R.R. at 66a, 80a, 82a, 88a, 90a. In fact, when Pauline Grimes first visited Dr. Savory in February of 1982, she had already been taking blood pressure medication which had been prescribed by another physician. At the

---

1. The majority concludes that summary judgment was inappropriate in this case because the summary judgment was granted on the basis of the deposition testimony of Dr. Savory. While it is true that summary judgment will generally not be granted on the basis of oral testimony offered on behalf of the moving party, the record in this case reveals that Dr. Savory's testimony was simply a summarization of his medical records; neither party disputes the accuracy of the records evidencing Pauline's numerous visits to Dr. Savory. In *Piccinini, supra,* this Court held that despite the trial court's finding that the testimony of the insured's treating physician was not credible, "[w]e are simply unable to believe that he was not aware that one of the conditions from which he was suffering and for which he sought treatment was arthritis, a common condition, especially when he had received treatment for that condition for so prolonged a period of years." 316 Pa.Super. at 531, 463 A.2d at 1025.

time of the February, 1982 visit, Dr. Savory informed Pauline of her blood pressure problem, prescribed medicine to lower the pressure, and recommended that she diet. In addition, on February 2, 1982, within the five years preceding the March, 1986 date on which Pauline Grimes had applied for life insurance, Pauline underwent an electrocardiogram, chest x-ray, liver x-ray, urinalysis, and blood tests. R.R. at 68, 69.

Dr. Savory next saw Pauline three months later, in May of 1982. Her blood pressure was down but her weight had not changed. Dr. Savory's notes indicated that Pauline had communicated to him that she was working hard on her diet. Four months later, in September, 1982, Pauline again visited Dr. Savory. Her blood pressure had lowered and she had lost 10 pounds on the diet. Dr. Savory continued her on the combined medication/diet program to lower her blood pressure.

Pauline Grimes again visited Dr. Savory in February of 1983, May of 1983, July of 1983, January of 1984, April of 1984, November of 1984, and March of 1985. The purpose of each of these visits was to check Pauline's blood pressure and weight. Throughout this entire period she continued on the prescribed regimen of medication and diet to reduce her high blood pressure.

Dr. Savory next saw Pauline over one year later, in June of 1986, when she was hospitalized. At the time of her admission, Pauline indicated that she was still taking the medicine for high blood pressure. R.R. at 82, 88.

Contrary to the majority's reading of the record, the testimony of Dr. Savory indicates unequivocally that Pauline's visits to him were made for the continued treatment and monitoring of her hypertension.

In March, 1986, one year after her last visit to Dr. Savory, Pauline Grimes answered "no" to the following questions in her insurance application:

.

17.  Has any person named in 1a or 10, within the last 12 months:

*    *    *    *    *    *

b.  ... taken medication for high blood pressure.

*    *    *    *    *    *

26.  Is any person to be covered now being treated or taking medicine for any condition or disease?

*    *    *    *    *    *

28.  Other than as shown above, in the past 5 years has any person to be covered ...

*    *    *    *    *    *

b.  had electrocardiograms, x-rays for diagnosis or treatment, or blood, urine, or other medical tests?

*    *    *    *    *    *

29.  Does any person to be covered now have a known sign of any physical disorder, disease or defect not shown above?

R.R. 23a–24a.  Pauline responded "yes" to the following question:

28.  ... in the past 5 years has any person to be covered:
a.  consulted or been attended or examined by any doctor or other practitioner?

R.R. at 24.  Although Pauline named Dr. Savory as her treating physician in response to the question which requested the "full details" of the doctor visits, she merely explained the visits as "annual checkup" "ok." I believe that Pauline's omission of her lengthy and intensive treatment for her hypertension constituted bad faith, as the "uncontradicted documentary evidence" shows that Pauline Grimes had "consulted physicians so frequently [and] undergone medical ... treatment so recently ... that a person of ordinary intelligence could not have forgotten these incidents in answering a direct and pointed question in an application for insurance." *Piccinini, supra* at 530, 463 A.2d at 1024.  In further support of my position, I note that Pauline recalled and accurately reported some of her medi-

cal history in the insurance application, such as the fact that her gall bladder was removed when she was seventeen years old.[2] Given the 10 visits Pauline made to Dr. Savory during the three year period between 1982 and 1985 for treatment of her high blood pressure, and the fact that she did remember her last checkup with Dr. Savory, I am hard pressed to believe that she did not know her responses on the application were false. I find that the holdings in *Freedman v. Mutual Life Insurance Company of New York,* 342 Pa. 404, 409, 21 A.2d 81 (1941) and *Piccinini, supra,* cited by the majority, are controlling.

The majority focuses on whether Dr. Savory's testimony shows that Pauline fully appreciated the seriousness of her condition. According to my reading of the relevant case-law, this is not the proper inquiry in determining bad faith on the part of the insured. Regardless of whether Pauline comprehended the seriousness of hypertension, she knew that she had the illness, and that she was on medication to alleviate the problem. The insurance application did not inquire only as to serious illnesses, but instead requested the "full details" of any consultations with doctors. Thus, the question is not whether Pauline realized how ill she was; the question is whether at the time she completed her application, she knew she had been treated for the hyper-tension. I find that Pauline's failure to report her treatment for high blood pressure constituted bad faith as a matter of law.

For the foregoing reasons, I would affirm the judgment of the trial court.

---

**2.** I contrast Pauline's ability to remember the operation performed 25 years earlier with her failure to report her extensive treatment for high blood pressure, not with her failure to report the diagnostic testing.