AMERICAN EQUITY INSURANCE CO., Plaintiff,

v.

Patricia DiDOMENIC and John DiDomenic, Defendants.

and

Jacqueline TARTAGLIONE and Joseph Tartaglione, Interested Parties,

v.

INSURECO, INC. and TIG Premier Insurance Company, Third Party Defendants.

Civil Action No. 98–748.

United States District Court, E.D. Pennsylvania.

Sept. 1, 1998.

Christine H. Sheridan, Marshall, Dennehey, Warner, Coleman and Goggin, Philadelphia, PA, for Plaintiff.

Jonathan Sobel, Law Offices Benjamin S. Friedman, Cherry Hill, NJ, for Defendants.

## MEMORANDUM AND ORDER

KATZ, District Judge.

On November 12, 1996, fifteen year old Anthony Tartaglione was visiting in the home of John and Patricia DiDomenic, and at noon that day he fell off a kitchen stool and hit his head. At 12:01 p.m., Mrs. DiDomenic called the police to report the incident. Anthony was taken to the hospital, where he was pronounced dead within the hour.

Anthony's parents, the interested parties in this suit,[1] have prepared to file suit in state court against the DiDomenics to recover for their son's death. In this declaratory judgment action, the DiDomenics' homeowners' insurer, American Equity, seeks a ruling that it is not required to provide coverage for the accident because the accident occurred between the time the DiDomenics applied for coverage and the time that the policy was bound by the company later that day. Before the court are cross-motions for summary judgment. For the reasons that follow, the court finds that the occurrence is

---

1. The complaint designated the Tartagliones as "interested parties," and the parties have continued to use that term. The court will use it as well, though noting that there is no legal significance to it and that the Tartagliones are actually defendants.

covered under the policy, and therefore plaintiff's motion will be denied and the interested parties' motion will be granted.

*Factual Background* [2]

On November 12, 1996, at around 9:30 a.m., Patricia DiDomenic went to the office of Gina Burke, and independent insurance broker. Mrs. DiDomenic completed an application for homeowners' insurance from American Equity. (*See* Pl. Mot. Ex. B.) The application consisted of a standardized pre-printed form with boxes and spaces to be filled in by the applicant. The boxes indicating the dates of coverage applied for were filled in from "11/12/96" to "11/12/97," and pre-printed language under the boxes said, "12:01 AM STANDARD TIME." Above the boxes, the form said, "Effective date may not be earlier than postmark or FAX date." Further down the page, the form said, "This is an application for insurance only. No Binding Authority is extended to the Producer, nor is coverage bound until received and approved by the Insurance Underwriters." In the section labeled "Underwriting Questionnaire," Mrs. DiDomenic answered "no" to the question, "Has the applicant suffered any losses during the last 3 years?"

Mrs. DiDomenic left Ms. Burke's office, did some other errands, and returned home later that morning. At noon, Anthony Tartaglione's accident occurred as described above.

At the time of Anthony's accident, the application for homeowners' insurance Mrs. DiDomenic had completed that morning had not yet made its way through the approval process. At 1:35, Ms. Burke faxed the application to American Equity's agent, Insurance Innovators. Insurance Innovators approved the application and bound the policy sometime that afternoon. The front page of the policy states that the policy's coverage period is from 11/12/96 to 11/12/97, "At 12:01 A.M. Standard Time." (*See* Pl. Mot. Ex. C.)

*Discussion* [3]

■ The Tartagliones argue that the accident is covered by the policy, because the policy states that coverage began at 12:01 a.m. 11/12/96, and the accident occurred after that time. American Equity argues that the accident is not covered by the policy, because by the time the application was actually received and evaluated by Insurance Innovators in the afternoon, it contained incorrect information, and therefore the accident was not covered.[4]

In support of its position, American Equity cites *Carroll v. Preferred Risk Insurance Co.*, 34 Ill.2d 310, 215 N.E.2d 801 (Ill.1966), in which the Illinois Supreme Court held that the insurance company was not required to cover an accident that occurred between the time of the application and the actual issuance of the policy three days later, because the applicant failed in his good faith duty to update his application. Certainly *Carroll* is not binding precedent, but this court finds the dissent in that case persuasive. The dissent points out that because the policy at issue provided for coverage beginning at a specified antecedent time, it was not bad faith for the applicant not to inform the

**2.** There is no dispute between the parties as to the relevant facts set forth here.

**3.** Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). At the summary judgment stage, the court does not weigh the evidence and determine the truth of the matter. Rather, it determines whether or not there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In making this determination, all of the facts must be viewed in the light most favorable to, and all reasonable inferences must be drawn in favor of, the non-moving party. *See id.* at 256, 106 S.Ct. 2505.

The moving party has the burden of showing there are no genuine issues of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Mathews v. Lancaster General Hosp.,* 87 F.3d 624, 639 (3d Cir.1996). In response, the non-moving party must adduce more than a mere scintilla of evidence in its favor, and cannot simply reassert factually unsupported allegations contained in its pleadings. *See Anderson,* 477 U.S. at 249, 106 S.Ct. 2505; *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548; *Williams v. Borough of West Chester,* 891 F.2d 458, 460 (3d Cir.1989).

**4.** American Equity does not seek to void the policy; in fact, the policy apparently continues in force to the present day. Instead, the company seeks to exclude that one incident from coverage. The company does not propose when exactly coverage should be deemed to have begun.

company about the accident, but rather the insurance company entered into a binding contract and should be held to it: "[T]he majority overlooks the crucial difference between the duty to notify of changed conditions under an ordinary application and the duty that exists when predated insurance is involved." *Id.* at 805. The dissent explained:

> In these circumstances it seems to me singularly inappropriate to speak of a lack of good faith on the part of the applicant for the insurance policy. In this case the applicant sought insurance coverage from the day he made the application. He applied for a policy that would be effective beginning 12:01 A.M. June 22, 1962. The company was not required to accept that application, but it did so. To permit the company to repudiate its contract thereafter seems to me to sanction bad faith on the part of the insurance company.

*Id.* Simply put, the application form and policy language (drafted by the insurer, it is worth noting) clearly state that coverage begins at 12:01 a.m.; and once the company so contracts, it must perform accordingly when an incident occurs during the contracted-for coverage period.

Under Pennsylvania law, an insurance contract is voidable by the insurance company if (1) the insured made a false statement in the application; (2) the insured knew it to be false when made, or otherwise acted in bad faith; and (3) the representation was material to the risk being insured. *See Matinchek v. John Alden Life Ins. Co.,* 93 F.3d 96, 102 (3d Cir.1996); *Schleifer v. Nationwide Life Ins. Co.,* 421 Pa. 359, 219 A.2d 692, 693 (Pa.1966). Here, Mrs. DiDomenic did not have make a false statement about the accident at the time she filled out the application, because it had not yet occurred. American Equity makes no allegation of bad faith, and the facts of this case would not support such an allegation were it made. Therefore, this case law does not offer the insurer an escape from its responsibility of coverage.