NYGAARD, J.,
dissenting.
I believe that Pennsylvania’s bad faith inference, as explained in Freedman v. *527 Mut. Life Ins. Co. of N.Y., 342 Pa. 404, 21 A.2d 81, 84 (1941), is not in conflict with Rule 56 of the Federal Rules of Civil Procedure and, therefore, should be applied by this Court to analyze MetLife’s motion for summary judgment. Under that analysis, I believe Loretta Justofin’s failure to disclose her weekly medical examinations with her son and the Prednisone prescriptions she received as a result of those examinations were material omissions from which bad faith must be inferred. Accordingly, I do not believe the District Court erred by granting MetLife’s motion for summary judgment on the Appellants’ breach of contract claim, and so dissent from the majority on this point.
Pennsylvania courts will infer bad faith as a matter of law when an insured fails, in the face of a direct and pointed question, to disclose medical treatment that a person of reasonable intelligence could not have forgotten. Id.; Grimes v. Prudential Ins. Co. of Am., 401 Pa.Super. 245, 585 A.2d 29, 31-33 (1991) (applying this bad faith inference in the summary judgment context). The majority, however, does not apply the inference and, instead, decides this issue under Rule 56(c), regardless whether Pennsylvania courts would infer in certain instances bad faith as a matter of law when considering summary judgment. I disagree.
Federal courts must apply the properly enacted Federal Rules of Civil Procedure in place of any state rule that directly collides with those rules. Chamberlain v. Giampapa, 210 F.3d 154, 159 (3d Cir.2000) (citing Hanna v. Plumer, 380 U.S. 460, 470-74, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965)). I do not believe that Pennsylvania’s bad faith inference directly collides with Rule 56(c). In Anderson v. Liberty Lobby, Inc., the Supreme Court stated that under Rule 56(c), “the substantive law will identify which facts are material.” 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Further, “only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.” Id. As the majority acknowledges, there is no dispute that Pennsylvania’s substantive law applies to this case. Under Anderson, I see no conflict between Pennsylvania’s bad faith inference and Rule 56(c); Pennsylvania’s law simply identifies what is and is not material under the Federal Rule. Specifically, if Loretta Justofin failed to disclose medical treatment on her insurance application that “a person of ordinary intelligence could not have forgotten,” then facts about whether or not she actually knew about that treatment or actually engaged in bad faith conduct are immaterial, because judgment can be entered in favor of MetLife on this issue even in the face of a contrary conclusion by the jury. Freedman, 21 A.2d at 84-85 (affirming the trial court’s decision to set aside a jury verdict in favor of the plaintiff where the uncon-tradicted evidence established that the plaintiffs history of medical treatments was such that no person of ordinary intelligence could have forgotten those treatments).
We have recently applied this rule in a case similar to this case. In Burkert v. Equitable Life Assurance Soc’y of Am., 287 F.3d 293, 297-98 (3d Cir.2002), we had to determine whether summary judgment was properly entered against an insured who failed to fully disclose on his insurance application the extent of his drug abuse and related treatment. We held that the District Court acted appropriately by “not[ing] that courts applying Pennsylvania law have routinely held that misrepresentations regarding alcohol abuse are deemed to be made in bad faith as a matter of law and extending] this holding to include misrepresentations regarding drug use.” Id. We cited Grimes, among other cases, for the proposition that fraud *528 can be properly inferred in these types of situations. Id. at 298.
I see no material difference between Pennsylvania’s inference of bad faith for failing to disclose alcohol abuse and its same inference for failing to disclose substantial medical treatment. Accordingly, based on Burkert and Anderson, I believe the District Court properly applied Pennsylvania’s bad faith inference.
I also believe the District Court properly found the medical treatment omitted by Loretta Justofin was of such a nature that bad faith was properly inferred. It is undisputed that she did not disclose on either of the relevant insurance applications that from 1994 until some point in 1998 she was examined by her son, Dr. Justofin, on a weekly basis and that, as part of those examinations, Dr. Justofin prescribed Prednisone to treat her arthritis.
There is no question that for between three and four years Dr. Justofin examined Loretta Justofin on a weekly basis and treated her arthritis. He began that treatment with over-the-counter drugs and then switched to the prescription drug Vol-tean. Finally, he prescribed Prednisone to treat what he believed to be a combination of osteoarthritis and rheumatoid arthritis. In 1994, when Loretta Justofin initially applied for insurance with MetLife, she indicated that she was being seen by her son and was taking Voltran. However, on her change of insurance application, she never indicated that she continued to see her son after 1994 and that he changed her treatment to Prednisone.[14] Loretta Justo-fin was still taking Prednisone when she completed this change of insurance application.
The question that must be asked in order to determine whether an inference of bad faith arises from Loretta Justofin’s failure to disclose is whether “a person of ordinary intelligence could not have forgotten these [treatments] in answering a direct and pointed question in an application for insurance.” Freedman, 21 A.2d at 84. Based on the frequency of Dr. Justofin’s examinations and the fact that Loretta Justofin took Prednisone for at least three years to treat a symptomatic disease, I do not believe a person of ordinary intelligence could have forgotten these treatments when filling out the relevant insurance application.
This omission was also material. The unrebutted affidavit of a MetLife representative establishes that Dr. Justofin’s treatment of his mother with a steroid prescription drug for arthritis would result in MetLife increasing her premium to take into account moderate rheumatoid arthritis. See New York Life Ins. Co. v. Johnson, 923 F.2d 279, 281 (3d Cir.1991) (“A misrepresented fact is material if being disclosed to the insurer it would have caused it ... to demand a higher premium.”). This statement is supported by MetLife’s underwriting guidelines.
For these reasons I would not reverse the District Court’s grant of summary judgment in favor of MetLife and respectfully dissent on this point. I agree with the majority on the remaining issues addressed in its opinion.

. It should also be noted that the record shows that Loretta Justofin was familiar with Prednisone because she had self-medicated with it in 1969 to treat her arthritis.