287 F.3d 293
 Grace BURKERT,
v.
The EQUITABLE LIFE ASSURANCE SOCIETY OF AMERICA,
v.
Jacob Jamison, A minor, by and through his natural parent and guardian Cosima Jamison, Third-Party Defendant.
Grace Burkert and Jacob Jamison, a minor, by and through his parent and guardian Cosima Jamison, Appellants.
 No. 01-1846.
 United States Court of Appeals, Third Circuit.
 Argued January 23, 2002.
 Filed April 25, 2002.
 
 Robert G. Bauer (Argued), Abraham, Bauer & Spalding, Philadelphia, PA, Counsel for Appellants.
 Daniel J. Zucker (Argued), Philadelphia, PA, Counsel for Appellee.
 Before NYGAARD and STAPLETON, Circuit Judges, and CAPUTO,* District Judge.
 OPINION OF THE COURT
 NYGAARD, Circuit Judge.
 
 
 1
 Appellee, The Equitable Life Assurance Society of America, canceled a $1 million dollar insurance policy on the life of Seth Jamison because he lied about his drug and alcohol use and treatment in his application. These misrepresentations were discovered in a routine investigation after Seth Jamison died as a result of an overdose of heroin and cocaine. Appellants, Grace Burkert and Jacob Jamison, argue that the critical items of evidence — treatment records of Decedent's marriage counselor and another psychologist — are inadmissible and should not have been considered by the District Court in granting summary judgment for the insurer. In support of their argument, Appellants attempt to invoke Decedent's psychotherapeutic privilege. The District Court held that Appellants do not have standing to assert the psychotherapeutic privilege because they are neither the patient nor the personal representative of the patient. It then declared the policy void ab initio and granted summary judgment in favor of the insurers.[2] Because the Supreme Court of Pennsylvania has not decided this precise issue, we must predict how they will when confronted with it. 2-J Corp. v. Tice, 126 F.3d 539, 541 (3d Cir.1997); Kiewit Eastern Co. v. L & R Cons.Co., Inc., 44 F.3d 1194, 1201 n. 16 (3d Cir.1995). We predict that it would decide the issue precisely as the District Court did, so we will affirm.
 
 I. Standing
 
 2
 Appellants argue that to determine standing, we must identify which party has a "legally sufficient interest." Pa. Game Comm'n v. Dep. of Envtl. Res., 521 Pa. 121, 555 A.2d 812, 815 (1989) (standing inquiry is to ascertain that a petitioner has a "legally sufficient" interest to qualify that person as a proper party to make a challenge). Appellants argue that since the beneficiaries can release the insurance company from its obligation to pay the proceeds of the policy, they are the real parties in interest with respect to the policy. This right, they contend, vests them with standing to represent Decedent's interests in an action to collect on his life insurance policy. The question of who has the right to enforce or waive the privilege, Appellants conclude, is answered simply by determining who has an interest in carrying out the intention of the Decedent. Appellants are wrong.
 
 
 3
 Without Pennsylvania Supreme Court precedent to inform it, and because the rationale for the psychotherapeutic privilege is the same as for the attorney-client privilege, the District Court turned to attorney-client privilege cases for guidance.[3] Here, the District Court discovered that "Pennsylvania courts have held that only the client has standing to assert the privilege." Commonwealth v. Trolene, 263, 397 A.2d 1200, 1204-05 (1979) (holding in a conspiracy case, where a defendant tried to invoke a co-conspirator's attorney-client privilege, that the privilege is not a rule of competency and that no one other than the client had standing to assert it); Commonwealth v. McKenna, 213 A.2d 223, 226 (1965) (defendant in a blackmail trial could not invoke the privilege of his acquaintance because it belonged to the acquaintance); Estate of Dowie, 135 Pa. 210, 19 A. 936, 937 (1890) ("It is the privilege of the client to object, and not of a stranger, even if the testimony objected to was a privileged communication.").
 
 
 4
 We agree with the District Court. The Trolene court held that a non-client may not assert the attorney-client privilege regardless of any interest he may have in the outcome of the litigation:
 
 
 5
 As to the claim based on the attorney-client privilege between Lam and Brown, appellant has no standing to invoke it. Commonwealth v. McKenna, 206 Pa.Super. 317, 322, 213 A.2d 223, 226 (1965); 8 Wigmore, Evidence at 2321 (1961). Appellant claims that the privilege is by statute ... a rule of competency, allowing anyone to invoke it, but cites for us no cases so construing the statute. In fact, the case of Estate of Dowie, 135 Pa. 210, 19 A. 936 (1890) holds exactly the opposite.
 
 397 A.2d at 1204.[4]
 
 6
 In an estate situation, the Pennsylvania Supreme Court held that a non-client had no standing to assert the attorney-client privilege. Specifically, the issue in Estate of Dowie, 135 Pa. 210, 19 A. 936 (1890), was whether the decedent, John Dowie, promised during his lifetime to sell petitioner, McNulty, a hotel. At the trial, the Orphan's Court Judge, overruling the attorney-client objection of petitioner, permitted decedent's executor attorney to testify as to the conversations with his deceased client. In affirming the ruling of the lower court, the Pennsylvania Supreme Court ruled:
 
 
 7
 The auditor cannot be convicted of error in admitting the testimony of Harry Hall, Esquire, as to conversations had with Mrs. Dowie, his client. McNulty cannot object to the reception of this evidence, even if the testimony was of a confidential character. Hall was not the attorney of McNulty, and it was not in his power to object. It is the privilege of the client to object, and not of a stranger, even if the testimony objected to was a privileged communication.
 
 
 8
 Id. at 937.
 
 
 9
 Appellant, Grace Burkert, is not the Executrix of Decedent's estate, nor is she the Decedent's spouse, nor does she legally represent the Decedent in any capacity — she is merely a policy beneficiary. Neither is Appellant or Decedent's minor son, Jacob Jamison, the "client" of the therapist,[5] nor the legal representative of Decedent. We have found no case that would lead us to predict that Pennsylvania courts would extend standing in this situation to third party beneficiaries of an insurance policy, who after all, may well be total strangers — personally and legally — to the policy holder/decedent. Because the District Court properly admitted the treatment records, we now review its declaration that the policy is void ab initio.
 
 
 10
 II. Questions Regarding Drug Use in Decedent's Insurance Application
 
 
 11
 Under Pennsylvania law, a life insurance policy is void ab initio where the applicant's representations are: 1) false; 2) made fraudulently or otherwise made in bad faith; and 3) material to the risk assumed. Matinchek v. John Alden Life Ins. Co., 93 F.3d 96, 102 (3d Cir.1996) (citations omitted). Appellants argue that, under a summary judgment standard, questions of fact exist with respect to each element.
 
 A. Falsity
 
 12
 The District Court concluded that "[i]t is clear from the evidence that decedent answered question six falsely in at least two respects: (1) there is substantial evidence that decedent failed to disclose his continued use of illegal controlled substances beyond 1990; and (2) decedent failed to disclose significant addiction treatment by Dr. Forest, including prescriptions for Antabuse and Prozac."[6]
 
 
 13
 Question 6(a) asks whether the proposed insured has used narcotics and other drugs within the last ten years; question 6(b) asks whether the proposed insured has received medical counseling or medical treatment regarding the use of alcohol or drugs. The application stated that Decedent's answers are "true and complete to the best of my knowledge and belief." The answers were expressly made part of the application, and the application required the answers to be "complete". In his answer to question six, Decedent described his drug and alcohol use and treatment as follows: "late 80s-1990 — occasional use of cocaine — in patient treatment at Institute of Penna for 28 days no problems since."
 
 
 14
 Appellants argue that the "no problems since" response does not necessarily mean no drug use. Instead, Appellants argue, the response means that Jamison may have used cocaine since, but not to an extent that it was a "problem" requiring treatment. Even under a summary judgment standard, Appellants' argument fails. Uncontradicted documentary evidence (records of Ann Rosen Spector, Ph.D., and Jean Forrest, M.D.), and their uncontradicted deposition testimony unequivocally prove that Decedent continued to habitually use cocaine, received treatment and counseling for drugs and alcohol, and received prescriptions of Antabuse and Prozac for his alcoholism in the relevant time period. Thus, Decedent's answers to Questions 6(a) and 6(b) on Part 2 of the Application were patently false. There is likewise no question that Decedent knew his answers were false. At the time of the Application, he was still using cocaine and undergoing treatment with Ann Rosen Spector, Ph.D. for alcohol and drug use.
 
 B. Decedent's Statements Were Made in Bad Faith
 
 15
 The District Court concluded that statements made in Decedent's insurance application, based on Decedent's false representations as to his drug abuse and counseling, were made in bad faith. The District Court correctly noted that courts applying Pennsylvania law have routinely held that misrepresentations regarding alcohol abuse are deemed to be made in bad faith as a matter of law and extended this holding to include misrepresentations regarding drug use. See, e.g., Van Riper v. The Equitable Life Assurance Soc'y of the United States, 561 F.Supp. 26, aff'd without opinion, 707 F.2d 1397 (3d Cir. 1983); 6 Couch on Insurance § 88:20 (3d ed. & Supp.2000). We agree that to equate alcohol abuse to drug abuse is both reasonable and logical.
 
 
 16
 Appellants argue that most cases supporting the inference of bad faith result from an untruthful "no" answer to a "yes or no" question. Here, Appellants allege, that Jamison's answers were truthful, and argue that it is a question of fact as to whether the "incomplete" answers can be deemed bad faith. It is not, however, a question of fact, because we have specifically held that "[f]raud is presumed ... from knowledge of the falsity." Coolspring Stone Supply, Inc. v. Am. States Life Ins. Co., 10 F.3d 144, 148 (3d Cir.1993); Evans v. Penn Mut. Life Ins. Co., 322 Pa. 547, 186 A. 133, 138 (1936) (inference of fraud is irresistible when, for example, unreported illness or disability of the insured was so serious and so recent that he could not have forgotten it); Grimes v. Prudential Ins. Co., 401 Pa.Super. 245, 585 A.2d 29, 31 (1991). Given that the drug use and treatment/counseling for drug and alcohol use were substantial, and proximate in time (even ongoing) when Decedent completed his application, Appellants' so-called "ambiguity" argument is frivolous, and we affirm the District Court's conclusion of bad faith.
 
 C. Decedent's Misrepresentations Were Material to the Risk Assumed
 
 17
 "A misrepresented fact is material if being disclosed to the insurer it would have caused it to refuse the risk altogether or to demand a higher premium." New York Life v. Johnson, 923 F.2d 279, 281 (3d Cir.1991) (citing McCaffrey v. Knights & Ladies of Columbia, 213 Pa. 609, 63 A. 189 (1906)); see also Piccinini v. Teachers Protective Mut. Life Insurance Co., 316 Pa.Super. 519, 463 A.2d 1017, 1024 n. 2 (1983) (citations omitted). "`Every fact is material which increases the risk, or which, if disclosed, would have a fair reason for demanding a higher premium.'" New York Life, 923 F.2d at 282 (citing Hartman v. Keystone Ins. Co., 21 Pa. 466, 477 (1853)). Courts have repeatedly held that false answers relating to the insured's treatment for alcoholism and alcohol use are material as a matter of law. Van Riper, 561 F.Supp. at 31; 6 Couch on Ins. § 88:6 (3d ed.1996) (listing cases).
 
 
 18
 Appellants argue that there is still a question of fact as to the extent of the influence Jamison's misrepresentation had on the underwriting decision to provide Jamison with life insurance. Appellants argue that the insurers knew of Jamison's past drug and alcohol problem and took the possibility of Jamison's relapse into its calculation of the risks of providing him with insurance. Thus, Appellants argue, Jamison was a "calculated risk" and the formula of calculation (e.g., how the equation would have changed if the insurance company knew of Jamison's true history) is a question of fact, which trumps the District Court's materiality conclusion as a matter of law.
 
 
 19
 Appellants' argument fails. The evidence and level of misrepresentation are undisputed by other evidence of record, and they clearly support the District Court's conclusion that "knowledge of the true nature of decedent's drug and alcohol use would have caused Equitable to decline the risk or require higher premiums."
 
 III. Conclusion
 
 20
 In sum, the District Court properly considered the treatment records and correctly concluded that the life insurance policy was void ab initio. Accordingly, we will affirm.
 
 
 
 Notes:
 
 
 *
 Honorable A. Richard Caputo, District Judge for the United States District Court for the Middle District of Pennsylvania, sitting by designation
 
 
 [2]
 As alternate holdings, the District Court also found that Decedent and the Decedent's executors waived the privilege. Since we affirm on the standing issue, we do not reach these alternate holdings here
 
 
 [3]
 Decedent's treatment records are privileged under 42 Pa.C.S.A. § 5944 which provides:
 No psychiatrist or person who has been licensed ... to practice psychology shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client. The confidential relations and communications between a psychologist or psychiatrist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client.
 This privilege applies to the communications themselves and records of those communications, and the privilege survives the death of the patient. Com. v. Counterman, 553 Pa. 370, 719 A.2d 284, 294 (1998) (application of the privilege); Cohen v. Jenkintown Cab Co., 238 Pa.Super. 456, 357 A.2d 689, 692 (1976) (privilege survives death). These records were created in the course of treatment of the Decedent and thus fall under the privilege.
 
 
 [4]
 We acknowledge that this case is unique because the "client" is deceased and the privilege survives the client's deathCohen, 357 A.2d at 692. Thus, for the privilege to survive, it logically follows that someone must be able to assert the privilege after a client's death. However, we limit our inquiry to the third-party beneficiaries in this case and leave the question of who can rightfully assert the privilege to the Pennsylvania courts or legislature, and another day.
 
 
 [5]
 Explicit in the psychotherapist-patient relationship is the requirement that the party seeking to invoke the privilege is the "client of the psychotherapist." Although not defined in the statute, a "client" has been characterized, as "an individual who employs a professional to provide advice and assistance."M.M.D. v. State Board of Medicine, 725 A.2d 1266, 1268 (1999); Fellowship Mission, Inc. v. Lehigh County, 690 A.2d 1271, 1275 n. 4 (1997).
 
 
 [6]
 The District Court based this holding on the following evidence: Dr. Spector individually counseled Decedent on seventeen occasions, fourteen of which were prior to when he signed the Application; Decedent informed Dr. Spector that he was using cocaine more than six times a year; Dr. Spector recommended that Decedent get drug counseling almost every week; Decedent was under the care of Dr. Forrest, an addiction specialist, from January 1992 to January 1995; Decedent had regular, repeated visits with Dr. Forrest from January 1992 to July 1994 and the counseling included abstinence from alcohol, cocaine, food and smoking; Dr. Forest prescribed Antabuse, a drug that causes illness if a person drinks when taking it; Dr. Forest prescribed Prozac in increasing dosage from December 1994 through January 1995