

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-25-2004

# Justofin v. Metro Life Ins Co

Precedential or Non-Precedential: Precedential

Docket No. 02-4264

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Justofin v. Metro Life Ins Co" (2004). *2004 Decisions.* Paper 535.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/535

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES
COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-4264

JEFFREY JUSTOFIN, CHRISTOPHER
JUSTOFIN; DAMIAN JUSTOFIN;
ROBERT JUSTOFIN; IVAN
JUSTOFIN, (Beneficiaries of Loretta K.
Justofin, Deceased),

Appellants

v.

METROPOLITAN LIFE
INSURANCE CO.

On Appeal from the
United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 01-cv-06266
(Honorable John R. Padova)

Argued October 27, 2003

Before: SCIRICA, Chief Judge,
NYGAARD and AMBRO, Circuit Judges

(Opinion filed: June 25, 2004)

Timothy M. Kolman, Esquire
Wayne A. Ely, Esquire (Argued)
Timothy M. Kolman & Associates

225 North Flowers Mill Road
Langhorne, PA   19047

*Attorneys for Appellants*

Alvin Pasternak, Esquire
Anthony J. Tomari, Esquire
Metropolitan Life Insurance Company
Law Department
One Madison Avenue
New York, NY 10010-3690

Veronica W. Saltz, Esquire (Argued)
Saltz Polisher
993 Old Eagle School Road
Suite 412
Wayne, PA   19087

*Attorneys for Appellee*

OPINION OF THE COURT

AMBRO, Circuit Judge

The Justofins, beneficiaries under
the life insurance policy of their mother
Loretta K. Justofin ("Loretta"), sued
Metropolitan Life Insurance Company
("MetLife") for denying a portion of death
benefit proceeds.  The District Court
granted summary judgment in favor of
MetLife by finding the amendment to the
life insurance policy increasing the benefit
void because of Loretta's failure to
disclose fully her medical history.  The
issues before us are: (1) whether MetLife
established that the amended policy was
void as a matter of law because of
Loretta's false representations, thus

warranting summary judgment against the Justofins on their breach of contract claim; (2) whether MetLife waived its right to contest the validity of the amended policy because it failed to investigate Loretta's representation before issuing the policy; (3) whether the District Court properly disposed of the Justofins' bad faith claim against MetLife by finding the amended policy void; (4) whether the District Court erroneously granted MetLife's motion to amend its pleading; and (5) whether the District Court erred in not addressing the Justofins' motions for discovery and sanctions.

We vacate the District Court's summary judgment in favor of MetLife and remand this case for further proceedings. Specifically, we conclude that the amended life insurance policy issued by MetLife was not void as a matter of law; that MetLife did not waive its challenge to the validity of the amended policy; that whether MetLife acted in bad faith should be dealt with separately from the contract claim; and that the District Court properly exercised its discretion in allowing MetLife to amend its pleading. As for the Justofins' motions for discovery and sanctions, we leave them to the District Court's discretion on remand.

## I. Background

In April 1994 Loretta initially applied for a life insurance policy from MetLife. In the application, she listed her son, Dr. Christopher Justofin,[1] as her personal physician, mentioning that Dr. Justofin treated her for occasional arthritis of her hands and feet. MetLife issued the life insurance policy to Loretta in the amount of $100,000.

Five years later, at the age of sixty-four, Loretta applied to increase the policy amount, from $100,000 to $300,000, by completing an "Application for Change of Placed Personal Life Insurance" form. It contained the following pertinent questions and answers.

11. Has any person EVER received treatment, attention, or advice from any physician, practitioner or health facility for, or been told by any physician, practitioner or health facility that such person had:

> (j) Arthritis, paralysis, or disease or deformity of the bones, muscles or joints? *Yes*
>
> . . . .

15. In past 5 years, has any physician, practitioner or health facility examined, advised or treated any person? *Yes*

The application instructed Loretta to provide the details about her "yes" answers in questions 11 and 15, including the name

---

[1] At the time, Dr. Justofin had just begun his residency in family medicine, which he finished in February 1996.

2

of each physician, nature and severity of condition, frequency of attacks, specific diagnosis, and treatment. She provided names of several doctors and the details of surgeries and treatment, including her foot surgery for arthritis. Although Loretta listed several doctors who treated her, including Dr. Eugene Jacobs (her then personal physician), she did not mention Dr. Justofin in this 1999 change application. In Part B of the application, Loretta again noted that she had arthritis and that she self-medicated Prednisone in 1969 for her arthritis when she owned a pharmacy. Part C, the "Paramedical Evaluation," shows that Loretta disclosed that she had an "unknown type" of arthritis that caused noticeable hand swelling. Effective May 1999, MetLife issued the increase in death benefit coverage.

Loretta died on December 7, 1999. MetLife paid the Justofins $100,000 based on the original 1994 policy but informed them that it was voiding the amended policy's $200,000 increase. Initially, MetLife's stated reason for voiding the increase was that Loretta failed to disclose that she had Lupus.[2] The Justofins brought suit against MetLife in the Eastern District of Pennsylvania,[3] claiming breach of contract, bad faith, and negligence. MetLife counterclaimed, seeking a declaration that the policy increase was void *ab initio*, and moved for summary judgment. The District Court granted MetLife's summary judgment motion on the negligence issue but denied it as to the other issues.

MetLife then filed a motion for reconsideration based on the evidence that Loretta used Prednisone, a drug used to treat Lupus. MetLife deposed Dr. Justofin regarding this matter. He testified that he was a personal physician of his mother from 1994 until sometime in 1998. During this period, Dr. Justofin visited Loretta weekly at her home to examine her and also to pick up his mail.[4] Dr. Justofin asserted that, although he treated his mother for arthritis, she never had Lupus. Although Dr. Justofin was not sure what kind of arthritis Loretta had, he speculated that she had rheumatoid arthritis, osteoarthritis, or both.[5] Dr. Justofin also mentioned that he used to write a six-month supply of Prednisone for Loretta's

---

[2]Systemic Lupus Erythematosus, a slowly progressive systemic disease marked by, among other things, arthritic changes. Whether Loretta in fact had Lupus is disputed but is not relevant to our decision. We note, however, that the record does not show any evidence that Loretta's death was related to Lupus.

---

[3]The District Court had jurisdiction under 28 U.S.C. § 1332.

[4]Dr. Justofin explained that he used his mother's address as his permanent address.

[5]Dr. Justofin testified that he never performed any tests to determine what kind of arthritis his mother had, partly because she did not want to make a trip to his office.

3

arthritis and she would adjust the dose depending on her condition.[6] Dr. Justofin also opined that Prednisone is a medication routinely prescribed for rheumatoid arthritis, rather than osteoarthritis.

MetLife thereupon motioned for leave to file a supplemental counterclaim, seeking a declaration that the policy increase was void based on Loretta's failure to disclose that her son had treated her and prescribed Prednisone for her.[7] The District Court granted the motion. MetLife then sought summary judgment on its new counterclaim and on the Justofins' breach of contract and bad faith claims. The District Court entered summary judgment in favor of MetLife on all claims. The Justofins appealed. We have appellate jurisdiction under 28 U.S.C. § 1291.

## II. Standard of Review

"We review the District Court's grant of summary judgment *de novo*." *Fakete v. Aetna, Inc.*, 308 F.3d 335, 337 (3d Cir. 2002) (citing *Fogleman v. Mercy*

---

[6]It is not clear from the record when Dr. Justofin started prescribing Prednisone and when he stopped. He recalled that the prescription began sometime in 1994 or the beginning of 1995 and ended sometime between 1997 and 1998.

[7]MetLife does not claim, however, that Loretta's death was in any way related to her arthritic condition or the medication for that condition.

*Hosp., Inc.*, 283 F.3d 561, 566 n.3 (3d Cir. 2002)). We therefore apply the same standard the District Court employed under Federal Rule of Civil Procedure 56(c). We should affirm the District Court's summary judgment if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material when its resolution "might affect the outcome of the suit under the governing law," and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing the record, we draw all justifiable inferences in favor of the nonmoving party. *Id.* at 255.

## III. Discussion

### A. Breach of Contract Claim

**1. Is the 1999 Policy Amendment void as a matter of law because of allegedly false material misrepresentations?**

We first determine whether the policy amount increase was void as a matter of law. If so, we shall affirm the District Court's summary judgment in favor of MetLife on the Justofins' breach of contract claim.

To void an insurance policy under the law of Pennsylvania,[8] the insurer has

---

[8]The parties agree that the substantive law of Pennsylvania applies.

4

the burden to prove that: (1) the insured made a false representation; (2) the insured knew the representation was false when it was made or the insured made the representation in bad faith; and (3) the representation was material to the risk being insured. *Coolspring Stone Supply, Inc. v Am. States Life Ins. Co.*, 10 F.3d 144, 148 (3d Cir. 1993) (citing *Shafer v. John Hancock Mut. Life Ins. Co.*, 189 A.2d 234, 236 (Pa. 1963)). The insurer has the burden to prove all three elements by clear and convincing evidence. *Batka v. Liberty Mut. Fire Ins. Co.*, 704 F.2d 684, 687 (3d Cir. 1983) ("Pennsylvania requires that an insurer establish the defense of fraud in the application by 'clear, precise and indubitable' evidence . . . [and] that the factfinder be satisfied of the elements of the defense by clear and convincing evidence.") (citations omitted).

This heightened burden of proof should be taken into account in ruling on summary judgment. *Anderson*, 477 U.S. at 255 ("[T]he determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case."). Consequently, where the clear and convincing evidence standard applies, the trial judge must inquire whether the evidence presented is such that a jury applying that evidentiary standard could find only for one side. In this case, if the evidence in the record reasonably supports the inescapable conclusion that MetLife has shown all three elements to void the policy by clear and convincing evidence, we shall affirm the summary judgment.

But if the evidence is such that a reasonable jury could find that MetLife has not shown all the elements by clear and convincing evidence, we shall reverse.

### (a) Did Loretta make false representations?

In this context, we first decide whether a rational jury must find that MetLife has shown that Loretta made false representations. The District Court found that her failure to list Dr. Justofin's treatment, along with his prescription of Prednisone, in her 1999 application so qualified.

In Pennsylvania, a false representation includes omission of an insured's medical information. *See Grimes v. Prudential Ins. Co. of Am.*, 585 A.2d 29, 31-32 (Pa. Super. Ct. 1991) (using the term "a misstatement of fact" to refer to an insured's failure to disclose fully her medical history). The Justofins correctly point out that their mother indeed disclosed in her initial 1994 application that Dr. Justofin was her personal physician.[9] But Loretta failed to inform MetLife about her son's prescription of Prednisone. Although the Justofins claim that Loretta disclosed that she took Prednisone for her arthritis, the record

---

[9]We agree with the Justofins that the 1994 and 1999 applications must be read together for the purpose of this litigation because the 1999 application was completed only for the purpose of increasing the face amount of the 1994 policy.

shows that she listed only her self-medication of Prednisone in 1969 but not her more recent use of the drug between 1994 and 1998. Because there is no evidence to contradict that Loretta failed to disclose this information, no genuine dispute exists as to whether her representations were false.

**(b) Did Loretta know that her representations were false or did she make them in bad faith?**

Next, MetLife must show that Loretta knew her representations were false or she made them in bad faith. While both involve state of mind, our discussion focuses primarily on bad faith, which was also the focus of the District Court.

The Justofins assert that a genuine issue of material fact exists whether Loretta's omissions were innocent, inadvertent mistakes rather than bad faith misrepresentations. If so, the District Court erred in determining Loretta's bad faith as a matter of law.

MetLife argues that we should adopt the summary judgment standard that Pennsylvania courts apply to insurance fraud cases. It contends that this case falls into one of the rare instances in which Pennsylvania courts would infer bad faith as a matter of law when considering summary judgment, and therefore we must also do so. We disagree for the following reasons.

A federal court sitting in diversity jurisdiction follows a Federal Rule of Civil Procedure when one of the Federal Rules is controlling the point in dispute. *Hanna*

*v. Plumer*, 380 U.S. 460, 473-74 (1965). When "the [Federal] Rule speaks to the point in dispute and is valid, it is controlling," and we need not pay any regard to state provisions, regardless whether they are in conflict with the Federal Rule. 19 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 4508 (2d ed. 1996). Only if there is no Federal Rule covering the point in dispute, or the scope of the Federal Rule is not sufficiently broad to control the issue before us, do we ask whether to apply the state law. *Walker v. Armco Steel Corp.*, 446 U.S. 740, 750-53 (1980); *see also McEwen v. Delta Air Lines, Inc.*, 919 F.2d 58, 60 (7th Cir. 1990) ("Only when the federal rules are silent need the federal court ask whether to use state rules as templates." (citing *Walker*)). Even then, a federal court "must apply the federal rule within its sphere of coverage." Wright, Miller & Cooper, *supra*, § 4508.

Rule 56(c) directly speaks to and thus controls the process pertaining to Loretta's intent in this case. MetLife in fact concedes that Rule 56(c) is sufficiently broad enough to cover the point in dispute. Appellee's Letter Brief at 6. Nevertheless, it argues that we are compelled to adopt the Pennsylvania law because, it claims, there is no conflict between the federal and state law in this case. Contrary to MetLife's argument, however, when a Federal Rule is clearly applicable (as is the case here), the absence of conflicting state law is all the more reason to adopt the controlling

Federal Rule. *Walker*, 446 U.S. at 747. Accordingly, by applying Pennsylvania's substantive law, we do not impress a different procedural requirement on Rule 56.[10]

---

[10]In contending that Pennsylvania law compels us to find bad faith as a matter of law, the dissent relies on a Pennsylvania Supreme Court case from 1941 that entered judgment for the insurance company notwithstanding a contrary verdict. *Freedman v. Mutual Life Ins. Co. of New York*, 21 A.2d 81 (Pa. 1941). We note that we would still reverse the District Court on this issue even under *Freedman*. There, the insured flatly denied having consulted any physician or having had any kind of treatment for any ailment in his insurance application form. *Id*. at 83. To the contrary, the insured consulted or visited five physicians more than twenty times over the period. *Id*. He also complained of pains in his chest, a nervous disorder, and dizziness to his physician, was prescribed a heart stimulant, and had his heart examined by three different physicians (all of whom spotted heart irregularities). *Id*. The only (and decidedly weak) evidence the plaintiff offered in rebuttal was the testimony of the insured's secretary that she thought he was in good health and had no knowledge of his visits to physicians. *Id*. The Court concluded that, under the circumstances, "[t]he only reasonable assumption that can be drawn . . . is that the insured knowingly and fraudulently gave false answers." *Id*. at 85. We believe *Freedman*'s finding of

Generally an insured's state of mind is an issue of fact for the jury. *Coolspring*, 10 F.3d at 148. The issue of intent is "particularly inappropriate for resolution by summary judgment" because evaluating

bad faith as a matter of law must be confined to the cases where "the insured [falsely] denies in his answer that any physician has been consulted, or any medical or surgical treatment has been received during the period of inquiry." *Id*. at 84. In this case, Loretta did inform MetLife that: (a) she had arthritis; (b) Dr. Justofin treated her for this condition at some point; (c) she had surgery on her foot for arthritis; (d) she suffered noticeable hand swelling because of her arthritis; and (e) she tried different types of drugs to alleviate this ailment. Whether Loretta's failure to provide further details (such as the use of a particular drug) establishes her bad faith is an issue for the jury.

Moreover, we do not believe that our Court in *Burket v. Equitable Life Assurance Society of America*, 287 F.3d 293 (3d Cir. 2002), adopted a rule that infers bad faith as a matter of law under *Freedman*. The *Burket* panel merely cited the *dicta* portion of *Grimes*, a Pennsylvania Superior Court case. Though the Court in *Grimes* referred to *Freedman*, it did not deem *Freedman* to apply to the facts in *Grimes*, where the insured had disclosed her medical history but omitted material facts. 585 A.2d at 33. *Grimes* therefore held that the insured's intent and bad faith were for a jury to decide. *Id*.

7

state of mind often requires the drawing of inferences from the conduct of parties about which reasonable persons might differ. *Riehl v. Travelers Ins. Co.*, 772 F.2d 19, 24 (3d Cir. 1985) (citing *Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir. 1981)).

Contrary to the District Court's finding, we are not satisfied that Dr. Justofin's testimony and Loretta's answers in her policy applications incontrovertibly established her bad faith. Dr. Justofin merely testified that she suffered from arthritis of an unknown type, which she disclosed. The testimony also showed that Loretta saw her son on a weekly basis for a few years and he prescribed Prednisone for her during that period. She did not disclose this information in her 1999 application. With respect to Dr. Justofin's treatment, the District Court noted Loretta's disclosure of Dr. Justofin's treatment of her arthritis in her initial 1994 application. This shows, the Court concluded, that Loretta in bad faith did not disclose Dr. Justofin's treatment in the 1999 application. The District Court also referred to Loretta's omission of Dr. Justofin's prescription of Prednisone and contrasted it with her disclosure of taking self-medicated Prednisone from many years before.

It is possible that a jury could find it suspicious that Loretta somehow thought it unnecessary to reveal this information. But we do not believe that the only reasonable inference from this evidence is that Loretta must have had (or, at least, must have believed that she had)

rheumatoid arthritis and in bad faith concealed this information from MetLife by omitting her son's treatment visits and prescription of Prednisone. As this case came to us on summary judgment, all permissible inferences are to be drawn in the Justofins' favor. *Anderson*, 477 U.S. at 255. A jury might conclude that Loretta did not think that her son's casual visits were so important to report in her new application in great detail, especially when she had already disclosed that he was her personal physician and treating her for arthritis in her initial application, and when he had discontinued his weekly visits a year or two before the time of her new application. Furthermore, a jury might determine that Loretta not only was unaware of the type of arthritis she was suffering but also believed that further detail on the application, such as taking a particular drug, was unnecessary when she already stated that she had arthritis that was treated, *inter alia*, by a surgery.

We again emphasize that MetLife has the burden to prove Loretta's state of mind, a difficult task nearly always and especially when she is dead. In the context of this case, Loretta's knowledge of misrepresentations and bad faith may not be inferred as a matter of law, as they are genuine issues of material fact to be decided by a jury.

### (c) Were the misrepresentations material?

The third issue we consider is whether the information Loretta failed to disclose was material. Information is material if it would have influenced the

judgment of the insurer in making the contract or in fixing a premium. *Piccinini v. Teachers Protective Mut. Life Ins. Co.*, 463 A.2d 1017, 1024 (Pa. Super. Ct. 1983). The District Court found that Loretta was treated for rheumatoid arthritis and that as a matter of law the information was material since MetLife's guidelines showed that rheumatoid arthritis, a more serious type of arthritis than osteoarthritis, was an important factor in determining the insurance risk. But it is not at all obvious from the record that MetLife would have cancelled the policy (or even demanded a higher premium) had it known that Dr. Justofin was prescribing Prednisone. This is because MetLife adjusts its premiums based on the severity of an insured's rheumatoid arthritis, not the type of prescription drugs involved. MetLife argues that had Loretta disclosed her use of Prednisone for either moderate or severe rheumatoid arthritis, there could have been a decline of the increase in coverage. The record before us, however, does not clearly establish that Loretta even had rheumatoid arthritis or that her use of Prednisone was to treat her presumably rheumatoid condition.[11] Therefore, a jury must determine whether the undisclosed information was material.

---

[11]Again we emphasize that no record evidence indicates that Loretta's death was related to any form of arthritic condition or the medication for it. Indeed, as noted above, MetLife initially asserted that Loretta used Prednisone to treat her Lupus.

## 2. Did MetLife waive its right to contest the validity of the amended policy by failing to investigate?

We do not agree with the Justofins, however, that MetLife waived its right to contest the validity of the amended policy by failing to investigate. True, "the law of Pennsylvania is . . . that when a policy is issued on an application containing an ambiguous, unresponsive or incomplete answer[,] the insurer waives the right to assert the falseness or materiality of the question and answer." *Franklin Life Ins. Co. v. Bieniek*, 312 F.2d 365, 373 (3d Cir. 1962). From this, the Justofins argue that when their mother mentioned that she had an "unknown type arthritis," her answer was ambiguous on its face and, therefore, MetLife should have investigated further. We need not decide here whether "unknown type arthritis" was ambiguous on its face for, even if so, an insurer waives only the right to contest the validity of those particular responses while retaining the right to contest the validity of any other misrepresentations (such as, in this case, Loretta's omission of her son's treatment and drug prescription). *Id.* at 375.

## B. Bad Faith Claim

The Justofins argue that finding the amended policy void should not have resulted in the summary disposition of their bad faith claim against MetLife. Case law treats contract and bad faith claims as separate in insurance cases. *Margolies v. State Farm Fire & Cas. Co.*, 810 F. Supp. 637, 641-42 (E.D. Pa. 1992) (rejecting the insurer's contention that bad

faith assertion was contingent to a contract claim because the bad faith claim was essentially a claim on the policy itself).[12] The Justofins have not pointed to much (if any) evidence in support of their bad faith claim. But because the claim survived the first summary judgment motion, the District Court should have given a reason why it failed the second time. On remand, the District Court should treat the bad faith claim against MetLife separately from the contract claim, though we note that we voice no opinion whether the bad faith claim should yet again survive summary judgment.

## C. Leave to Amend MetLife's Pleading

The Justofins argue that the District Court abused its discretion when it granted MetLife leave to amend its pleading to add a counterclaim. *See* Fed. R. Civ. P. 15(a).[13] They assert that the District Court

---

[12]Although Pennsylvania's statute under which the plaintiff in *Margolies* brought a bad faith claim was later preempted, that does not change that a bad faith claim is a separate and independent cause of action.

[13]  The Rule provides:

A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . . . Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

should have denied the amendment because MetLife's claims are meritless and in bad faith. We disagree. First, we have concluded that the merit of the parties' claims relating to the policy amendment should be decided by a jury. Moreover, the case the Justofins rely on, *Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing of the Virgin Islands, Inc.*, 663 F.2d 419 (3d Cir. 1981), does not help their position.

> [L]eave to amend "shall be freely given when justice so requires"; this mandate is to be heeded . . . . Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules. The trial court's discretion under Rule 15, however, must be tempered by considerations of prejudice to the non-moving party, for undue prejudice is "the touchstone for the denial of leave to amend." In the absence of substantial or undue prejudice, denial must be grounded in bad faith or dilatory motives, truly

undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment.

*Id.* at 425 (citations omitted). In this case the Justofins do not show that they are unduly prejudiced by the District Court's grant of the amendment. Hence the District Court did not abuse its discretion in doing so.

### D. Motions for Sanctions and Additional Discovery

The Justofins also argue that the District Court abused its discretion when it did not rule on their motions for sanctions and additional discovery before it entered a summary judgment. We leave to the District Court's discretion to address them on remand.

### IV. Conclusion

Contrary to the decision of the District Court, we conclude that the 1999 amendment to Loretta Justofin's life insurance policy was not void as a matter of law, as it is for a jury to decide whether the misrepresentations in the application for the policy amendment were made knowingly or in bad faith and whether they were material. As to the other issues appealed: MetLife did not waive its right to contest the amended policy's validity by failing to investigate Loretta's statements pertaining to her arthritis; the District Court, while it may have good reasons to deny summarily the Justofins' claim of bad faith against Metlife, needs to set out these reasons; the District Court did not abuse its discretion in granting MetLife's motion to amend its pleadings to add a counterclaim; and, on remand, the District Court retains discretion to address the Justofins' allegations of discovery abuse and motions for sanctions and additional discovery. In this context, we vacate the District Court's grant of summary judgment and remand for further proceedings consistent with this opinion.

11

*Justofin v. Metropolitan Life Insurance Company*, No. 02-4264

NYGAARD, J., dissenting.

I believe that Pennsylvania's bad faith inference, as explained in *Freedman v. Mut. Life Ins. Co. of N.Y.*, 21 A.2d 81, 84 (Pa. 1941), is not in conflict with Rule 56 of the Federal Rules of Civil Procedure and, therefore, should be applied by this Court to analyze MetLife's motion for summary judgment. Under that analysis, I believe Loretta Justofin's failure to disclose her weekly medical examinations with her son and the Prednisone prescriptions she received as a result of those examinations were material omissions from which bad faith must be inferred. Accordingly, I do not believe the District Court erred by granting MetLife's motion for summary judgment on the Appellants' breach of contract claim, and so dissent from the majority on this point.

Pennsylvania courts will infer bad faith as a matter of law when an insured fails, in the face of a direct and pointed question, to disclose medical treatment that a person of reasonable intelligence could not have forgotten. *Id.*; *Grimes v. Prudential Ins. Co. of Am.*, 585 A.2d 29, 31-33 (Pa. Super. Ct. 1991) (applying this bad faith inference in the summary judgment context). The majority, however, does not apply the inference and, instead, decides this issue under Rule 56(c), regardless whether Pennsylvania courts would infer in certain instances bad faith as a matter of law when considering summary judgment. I disagree.

Federal courts must apply the properly enacted Federal Rules of Civil Procedure in place of any state rule that directly collides with those rules. *Chamberlain v. Giampapa*, 210 F.3d 154, 159 (3d Cir. 2000) (citing *Hanna v. Plumer*, 380 U.S. 460, 470-74 (1965)). I do not believe that Pennsylvania's bad faith inference directly collides with Rule 56(c). In *Anderson v. Liberty Lobby, Inc.*, the Supreme Court stated that under Rule 56(c), "the substantive law will identify which facts are material." 477 U.S. 242, 248 (1986). Further, "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* As the majority acknowledges, there is no dispute that Pennsylvania's substantive law applies to this case. Under *Anderson*, I see no conflict between Pennsylvania's bad faith inference and Rule 56(c); Pennsylvania's law simply identifies what is and is not material under the Federal Rule. Specifically, if Loretta Justofin failed to disclose medical treatment on her insurance application that "a person of ordinary intelligence could not have forgotten," then facts about whether or not she actually knew about that treatment or actually engaged in bad faith conduct are immaterial, because judgment can be entered in favor of MetLife on this issue even in the face of a contrary conclusion by the jury. *Freedman*, 21 A.2d at 84-85

12

(affirming the trial court's decision to set aside a jury verdict in favor of the plaintiff where the uncontradicted evidence established that the plaintiff's history of medical treatments was such that no person of ordinary intelligence could have forgotten those treatments).

We have recently applied this rule in a case similar to this case. In *Burkert v. Equitable Life Assurance Soc'y of Am.*, 287 F.3d 293, 297-98 (3d Cir. 2002), we had to determine whether summary judgment was properly entered against an insured who failed to fully disclose on his insurance application the extent of his drug abuse and related treatment. We held that the District Court acted appropriately by "not[ing] that courts applying Pennsylvania law have routinely held that misrepresentations regarding alcohol abuse are deemed to be made in bad faith as a matter of law and extend[ing] this holding to include misrepresentations regarding drug use." *Id.* We cited *Grimes*, among other cases, for the proposition that fraud can be properly inferred in these types of situations. *Id.* at 298.

I see no material difference between Pennsylvania's inference of bad faith for failing to disclose alcohol abuse and its same inference for failing to disclose substantial medical treatment. Accordingly, based on *Burkert* and *Anderson*, I believe the District Court properly applied Pennsylvania's bad faith inference.

I also believe the District Court properly found the medical treatment omitted by Loretta Justofin was of such a nature that bad faith was properly inferred. It is undisputed that she did not disclose on either of the relevant insurance applications that from 1994 until some point in 1998 she was examined by her son, Dr. Justofin, on a weekly basis and that, as part of those examinations, Dr. Justofin prescribed Prednisone to treat her arthritis.

There is no question that for between three and four years Dr. Justofin examined Loretta Justofin on a weekly basis and treated her arthritis. He began that treatment with over-the-counter drugs and then switched to the prescription drug Voltran. Finally, he prescribed Prednisone to treat what he believed to be a combination of osteoarthritis and rheumatoid arthritis. In 1994, when Loretta Justofin initially applied for insurance with MetLife, she indicated that she was being seen by her son and was taking Voltran. However, on her change of insurance application, she never indicated that she continued to see her son after 1994 and that he changed her treatment to Prednisone.[14] Loretta Justofin was still taking Prednisone when

---

[14]It should also be noted that the record shows that Loretta Justofin was familiar with Prednisone because she had self-medicated with it in 1969 to treat her arthritis.

13

she completed this change of insurance application.

The question that must be asked in order to determine whether an inference of bad faith arises from Loretta Justofin's failure to disclose is whether "a person of ordinary intelligence could not have forgotten these [treatments] in answering a direct and pointed question in an application for insurance." *Freedman*, 21 A.2d at 84. Based on the frequency of Dr. Justofin's examinations and the fact that Loretta Justofin took Prednisone for at least three years to treat a symptomatic disease, I do not believe a person of ordinary intelligence could have forgotten these treatments when filling out the relevant insurance application.

This omission was also material. The unrebutted affidavit of a MetLife representative establishes that Dr. Justofin's treatment of his mother with a steroid prescription drug for arthritis would result in MetLife increasing her premium to take into account moderate rheumatoid arthritis. *See New York Life Ins. Co. v. Johnson*, 923 F.2d 279, 281 (3d Cir. 1991) ("A misrepresented fact is material if being disclosed to the insurer it would have caused it . . . to demand a higher premium."). This statement is supported by MetLife's underwriting guidelines.

For these reasons I would not reverse the District Court's grant of summary judgment in favor of MetLife and respectfully dissent on this point. I agree with the majority on the remaining issues addressed in its opinion.

14